**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

TAMMY SEARLE, on behalf of herself and others
similarly situated,

8:25-cv-01211 (BKS/DJS)

                       Plaintiff,

v.

CONTACT LENS KING, INC.,

                       Defendant.

---

**Appearances:**

*For Plaintiff:*
James Gerard Stranch, IV
Michael C. Tackeff
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203

Lynn Toops
Vess Miller
Ian Bensberg
CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204

*For Defendant:*
Tal J. Lifshitz
Ofir Besharim
Kozyak Tropin & Throckmorton, LLP
2525 Ponce De Leon Boulevard, 9th Floor
Miami, FL 33134

Justin R. Meyer
Stafford, Owens Law Firm
One Cumberland Avenue
Plattsburgh, NY 12901

Ryan Lefkowitz
Adams Leclair LLP
28 East Main Street, Suite 1500
Rochester, NY 14614

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Tammy Searle brings this diversity action on behalf of herself and all others similarly situated against Contact Lens King, Inc. for violations of sections 349 and 350 of the New York General Business Law, the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. § 1750 et seq., the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (Dkt. No. 1). She alleges that Contact Lens King engaged in deceptive drip pricing practices when she purchased contact lenses on its website and was charged processing fees in addition to the advertised price of the contacts. (*Id*.).

Contact Lens King moves to dismiss Searle's complaint for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). (Dkt. No. 35).[1] The motion has been fully briefed. (Dkt. Nos. 35-2, 42, 43, 44, 45). For the reasons that follow, the motion is granted in part and denied in part.

---

[1] Contact Lens King also moves to dismiss Searle's complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Searle lacks standing to seek injunctive relief because she has not alleged any likelihood of future injury. (Dkt. No. 35-2, at 8). Because Searle has "voluntarily withdraw[n] all claims for injunctive relief," (Dkt. No. 42, at 19 n.3), the Court addresses only Defendant's argument under Federal Rule of Civil Procedure 12(b)(6).

II.    **FACTS**[2]

Searle alleges that she fell victim to Contact Lens King's deceptive pricing practice, called "drip pricing," when she bought contact lenses on its website. (Dkt. No. 1, ¶¶ 49–60). Drip pricing occurs when sellers disclose "only part of a product's total price to lure in consumers," but later add in hidden fees to the initially advertised price after "the consumer has spent significant time selecting and finalizing a product or service plan to purchase." (*Id.* at ¶ 15). This practice "interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction." (*Id.* at ¶ 25). "Drip pricing has been shown in several experimental, theoretical and real-world contexts to lead consumers to buy more, overspend, underestimate the total price, make mistakes while searching, and be less happy with their purchases." (*Id.* at ¶ 22). Moreover, drip pricing also harms an "honest business that 'sets forth the total price of its product at the outset'" because it puts them "at a significant disadvantage when compared to a seller that advertises an artificially low price to draw consumers in." (*Id.* at ¶ 30).

Searle alleges that she placed an order for contacts through Contact Lens King's website on October 29, 2024. (*Id.* at ¶¶ 49, 52). She added the 1-Day Acuvue Moist 90 Pack—priced at $19.95 per eye—to her cart and uploaded her prescription into the website. (*Id.* at ¶¶ 52–53). She expected her total to be $39.90—the price of contacts for both eyes—plus shipping. (*Id.* at ¶ 54). She "relied on the up-front price in comparing the service offered by Contact Lens King to other available services, and in her initial purchasing decisions." (*Id.* at ¶ 60). But in addition to the cost of the contacts and the shipping costs, Contact Lens King required Searle to pay $42.16 in

---

[2] These facts are drawn from the Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

additional "processing fees." (*Id.* at ¶ 56). According to Searle, Contact Lens King did not "specify what 'processing' services were covered by the $42.16 fees," or provide any other information on the processing fees. (*Id.* at ¶ 57).

Searle seeks to bring these claims on behalf of a nationwide class of "[a]ll United States residents who, within the applicable statutory [sic] of limitations, were charged 'Processing Fees' by Defendant," and a subclass of "[a]ll California residents who, within the applicable statutory [sic] of limitations, were charged 'Processing Fees' by Defendant." (*Id.* at ¶¶ 62–63).

## III.    STANDARD OF REVIEW

### A.    Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### B.    Consideration of Materials Extraneous to the Complaint

Contact Lens King submits three exhibits to its Motion to Dismiss: (1) "Exhibit A," a screenshot of a webpage, purportedly from Contact Lens King's website, showing the "1-Day Acuvue Moist 90 Pack" for sale, which states that "[a] processing fee will apply" underneath the sale price of $21.98 for the item, (Dkt. No. 35-3); (2) "Exhibit B," a screenshot of a webpage,

4

purportedly from Contact Lens King's website, which describes the processing fee that will be added to the item and explains its purpose, (Dkt. No. 35-4); and (3) "Exhibit C," a screenshot of the purported checkout webpage from Contact Lens King's website showing that one box for the right eye of the "1-Day Acuvue Moist 90 Pack" does not include a processing fee, (Dkt. No. 35-5).

Contact Lens King argues that the Court may consider its website on its Motion to Dismiss because it is "referenced in and integral to the Complaint." (Dkt. No. 35-2, at 9 n.2). In addition, it asks the Court to take judicial notice of the screenshots depicted in Exhibits A through C. (*Id.*).

On a motion to dismiss, courts consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Santos v. Kimmel*, 154 F.4th 30, 33 (2d Cir. 2025) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). "A plaintiff may incorporate allegations in the complaint by reference to another document," *Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)), but in order for that document to be incorporated by reference, the complaint must make a "clear, definite, and substantial reference" to [it]," *Xiotech Corp. v. Express Data Prods. Corp.*, 11 F. Supp. 3d 225, 234 (N.D.N.Y. 2014) (quoting *Thomas v. Westchester County Health Care Corp.,* 232 F.Supp.2d 273, 275–76 (S.D.N.Y.2002)).

Even if the plaintiff does not incorporate a document by reference to the complaint, courts may nevertheless consider a document extraneous to the complaint where the complaint "relies heavily upon its terms and effects." *Chambers*, 282 F.3d at 153. The Second Circuit emphasizes that the "plaintiff's *reliance* on the terms and effect of a document in drafting the

complaint is a necessary prerequisite to the court's consideration of the document" on a motion to dismiss and "mere notice or possession is not enough." *Id* (emphasis in original). "Merely mentioning a document in the complaint will not satisfy this standard" and even including "'limited quotations' from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation modified). "[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco*, 622 F.3d at 111 (quoting *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006)). "The 'no dispute' requirement has been interpreted strictly: even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 221 (N.D.N.Y. 2014) (collecting cases).

Federal Rule of Evidence 201 allows courts to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. "For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, so long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 482–83 (N.D.N.Y. 2019) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)). However, the information is not taken for its truth, but to determine what was stated. *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (quoting *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007)).

Here, the Court does not find that these website screen shots are incorporated by reference or integral to the Complaint. Although the Complaint alleges that Searle placed an

6

order on the Contact Lens King website, the Complaint does not describe what she saw on the website that led her to believe that the price would be $39.90 ($19.95 for each eye), plus shipping. The Complaint does not makes a clear, definite, and substantial reference to the webpage reflected in Exhibit A. In fact, Searle alleges that the price of the "1-Day Acuvue Moist 90 [P]ack" was $19.95 per eye, while the price for the same product as shown in Exhibit A is different, at $21.98 per eye. (*Compare* Dkt. No. 1, at ¶ 52, *with* Dkt. No. 35-3). Nor is Exhibit B, the screenshot of the webpage describing the processing fee, (Dkt. No. 35-4), or Exhibit C, the screenshot of the checkout webpage, (Dkt. No. 35-5) incorporated by reference to the Complaint. The Complaint does not make any reference to these webpages. Searle alleges that "Contact Lens King did not specify what 'processing' services were covered by the $42.16 fees" and that "it provided no information on the "Processing Fees." (Dkt. No. 1, ¶ 57).[3] And while Searle alleges that she bought contact lens for both eyes, Exhibit C is a screenshot of a checkout webpage for only one lens for a different price.

Nor are any of these exhibits integral to the Complaint. For a document to be integral to the Complaint, there must be "no dispute regarding the authenticity or accuracy of the document." *DiFolco*, 622 F.3d at 111. Here, it is not clear that any of the exhibits are authentic or accurately depict what Searle saw on the website when she placed her order on October 29, 2024. None of the screenshots of the webpages are dated and, as noted above, the $21.98 sale price advertised in the exhibits is different from the $19.95 price Searle alleges was advertised to her. Therefore, Exhibits A through C are not integral to the Complaint.

---

[3] Both parties cite to Exhibit B—which states that "a processing fee of $28.38 will apply per box" with an explanation above a box marked "OK"—in support of their arguments. Contact Lens King argues that this was a clear and conspicuous disclaimer "on the product's page, before the consumer enters her prescription and before the consumer adds the product to her shopping cart." Searle argues that Exhibit B was a "belated disclosure—at a point in the transaction at which consumers are highly unlikely to change course." These facts are entirely outside the record and the Court does not consider Exhibit B or these arguments.

Finally, the Court declines to take judicial notice of Contact Lens King's website or of Exhibits A through C because they are not "capable of accurate and ready determination." It is not clear that the screen shots accurately depict how the website looked at the time Searle accessed it on October 29, 2024. For all of these reasons, the Court finds that Exhibits A through C are extraneous to the Complaint and the Court does not consider them here.

## IV.    DISCUSSION

### A.    New York General Business Law Claims

Contact Lens King moves to dismiss Searle's claims under sections 349 and 350 of the New York General Business Law because she fails to allege that the transaction occurred in the state of New York. (Dkt. No. 35-2, at 19–22). Searle responds that the Complaint is sufficient because it "alleges that Defendant's deceptive practices are managed from its principal place of business in Champlain, New York." (Dkt. No. 42, at 14–15).

Sections 349 and 350 of the New York General Business Law both contain territorial limits. Section 349(a) prohibits "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*," N.Y. Gen. Bus. Law § 349(a) (emphasis added), and Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*," N.Y. Gen. Bus. Law § 350 (emphasis added). "The New York Court of Appeals in *Goshen v. Mutual Life Insurance Company of New York* appears to have interpreted the limiting phrase 'in this state' in sections 349(a) and 350 to require that 'the transaction in which the consumer is deceived . . . occur in New York.'" *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 & n.1 (N.Y. 2002)).

In considering whether the territorial requirement of sections 349 and 350 is met, courts have considered whether the deception of the consumer occurs in New York or whether the

8

transaction in which the consumer is deceived occurs in New York. *See id.* at 122–23; *Aminov v. DraftKings, Inc.*, No. 24-CV-8472, 2025 WL 2108543, at *5, 2025 U.S. Dist. LEXIS 144018, at *14–15 (E.D.N.Y. July 28, 2025) (citing cases). Noting "that the two tests are not mutually exclusive, in *Cruz*, the Second Circuit found that the appropriate test in that case, which involved an out-of-state plaintiff, "is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than 'on the residency of the parties.'" *Cruz*, 720 F.3d at 122 (quoting *Goshen*, 774 N.E.2d at 1196). Ultimately, the Second Circuit found that "[its] reading of *Goshen* and the cases construing it leads [it] to conclude that a deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349." *Id.* at 123.[4] Applying that test, the Second Circuit held that the transactions at issue occurred in New York and implicated the state's interests where the plaintiff alleged that the defendant was paid in New York, refused to disburse client funds until receiving paperwork at its office in New York, required all customer communications to go through that office, and its customer agreement had a New York choice of law clause.

Here, Searle fails to allege the required nexus to New York. She alleges that Contact Lens King is incorporated in New York with its principal place of business in Champlain, New York. (Dkt. No. 1, ¶ 13) According to Searle, Contact Lens King's "deceptive and false advertising took place within the State of New York, based on Defendant's conduct in this State that facilitated the transaction leading to Plaintiff's and Class members' injuries." (*Id.* at ¶ 78). But, the only alleged connections to New York are Contact Lens King's place of incorporation,

---

[4] The Second Circuit noted that its holding "do[es] not foreclose the possibility that the location of the deception may also serve to confer statutory standing under section 349." *Id.* at 123 n.4.

principal place of business, and Contact Lens King's "deceptive and false advertising" in New York which "facilitated the transaction" that injured Searle. That is not enough. Following *Goshen,* it is clear that "'hatching a scheme' in New York does not mean that the consumer 'transaction' has the requisite nexus to satisfy the territoriality requirement of the GBL," *Miramontes v. Ralph Lauren Corp.*, No. 22-CV-04192, 2023 WL 3293424, at *5, 2023 U.S. Dist. LEXIS 78991, at *13 (S.D.N.Y. May 5, 2023) (quoting *Goshen*, 774 N.E.2d at 1195); it is "the transaction in which the consumer is deceived [that] must occur in New York," *Goshen*, 774 N.E.2d at 1195; *see also Neala Commc'ns LLC v. Xerox Corp.*, 747 F. Supp. 3d 625, 639 (W.D.N.Y. 2024) ("Marketing plans created in New York but carried out elsewhere do not suffice to base a transaction in New York." (citing *Goshen*, 774 N.E.2d at 1195)). Searle has not alleged any facts showing that some part of the transaction itself took place in New York. *Compare Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020) (finding that the plaintiff's allegations that the defendants "hatched the deceptive scheme in New York; sent the relevant advertising materials from New York; and received payment and processed orders in New York" did not "individually nor cumulatively establish that some part of the underlying transaction occurred in New York," and that the allegations were "merely clever re-articulations of the allegation that the Defendants operate their principal place of business in New York"), *with Cruz*, 720 F.3d at 123–24 (finding that the transaction at issue took place in the state of New York and implicated the state's interests where the plaintiff alleged that the defendant was paid in New York, refused to disburse client funds until receiving paperwork at its office in New York, required all customer communications to go through that office, and its customer agreement had a New York choice of law clause.), *and Enneagram Personality Types, Inc. v. Kajtezovic*, 814 F. Supp. 3d 443, 462 (W.D.N.Y. 2025) (finding that the plaintiff alleged a

10

sufficient nexus to the state of New York where the plaintiff alleged that the subject websites are "hosted" in New York; two of the websites are operated by New York defendants; and one of the websites included a purchase receipt that listed the merchant in "Rochester, NY").

The authority Searle relies on is unavailing because she does not make the types of factual allegations in the cases which did connect the transactions at issue to the state of New York. *See, e.g.*, *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 168 (S.D.N.Y. 2014) (where the plaintiff alleged, unlike Searle, that the defendant actually operated their website from an address in New York and maintained its bank account there, and that the online-only services the defendant provided occurred on the website, "which was 'equivalent to communicating or transacting directly with a New York address'"); *People ex rel. Spitzer v. Telehublink Corp.*, 756 N.Y.S.2d 285, 289 (App. Div. 2003) (finding that the Attorney General had the authority to bring an action against the defendant on behalf of residents outside of New York because "the interests of New York were implicated when [the defendant] *used a New York address to* send and receive correspondence related to the telemarketing scheme . . . [and] *complete the deceptive transactions* at issue here." (emphasis added)).

Moreover, Searle has not alleged that any deception occurred in New York because she does not claim that she used Contact Lens King's website in New York, made her purchase while visiting New York, or that she bought New York-specific products. *Wheeler v. Topps Co., Inc.*, 652 F. Supp. 3d 426, 431–32 (S.D.N.Y. 2023) (finding that the plaintiff's claim under section 349 failed because "[c]ourts have consistently rejected claims under § 349 and § 350 based solely on an out-of-state customer's interacting with a website controlled in New York"); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (finding that the alleged deceptive practice occurred when the plaintiffs made their hotel reservations online and

11

dismissing the claims brought by plaintiffs who made the reservations outside of New York).

Accordingly, Searle has failed to state a claim under sections 349 and 350.

### B.    California Law Claims

#### 1.    Federal Rule of Civil Procedure 9(b)

Contact Lens King argues that Searle's claims under California law do not meet Federal

Rule of Civil Procedure 9(b)'s heightened pleading standard because she does not allege

> where she first viewed the purportedly misleading price, how she arrived at Contact Lens King's website, whether she previously browsed the website, whether she saw the processing fee disclaimer, when she learned that processing fees were included in her total, or the specific circumstances of her alleged reliance on price when compared to other retailers.

(Dkt. No. 35-2, at 19). Searle disagrees. (*See* Dkt. No. 42, at 13).

"Though claims under CLRA, UCL, and FAL do not include fraud as an element, they

are nonetheless subject to the heightened pleading requirements of Rule 9(b) if they are premised

on allegations of fraud." *Paulino v. Conopco, Inc.*, No. 14-CV-5145, 2015 WL 4895234, at *6,

2015 U.S. Dist. LEXIS 108165, at *15 (E.D.N.Y. Aug. 17, 2015) (collecting cases); *see also In*

*re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1091 (C.D. Cal. 2017). "[T]o satisfy Rule

9(b)'s requirement that 'a party . . . state with particularity the circumstances constituting fraud

or mistake,' Fed. R. Civ. P. 9(b), 'the complaint must: (1) specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent.'" *MacNaughton v. Young Living*

*Essential Oils, LC*, 67 F.4th 89, 99–100 (2d Cir. 2023) (quoting *Mills v. Polar Molecular Corp.*,

12 F.3d 1170, 1175 (2d Cir. 1993)). Rule 9(b) requires a heightened pleading standard, in part, to

"ensure that defendants receive fair notice of a plaintiff's claim, to enable preparation of a

defense." *Id.* at 99 (citation modified).

Here, Searle's claims sound in fraud because she alleges that Contact Lens King engaged in "deceptive," "misleading" and "fraudulent," pricing practices, (Dkt. No. 1, ¶¶ 51, 88, 99). *See Tyman v. Pfizer, Inc.,* No. 16-CV-06941, 2017 WL 6988936, at *10, 2017 U.S. Dist. LEXIS 212879, at *24–25 (S.D.N.Y. Dec. 27, 2017) (finding that the gravamen of the plaintiffs' complaint sounds in fraud because they allege that the defendant made "deceptive, "fraudulent, "misleading," and "demonstrably false" factual representations in labeling and marketing the products at issue), *report and recommendation adopted*, 2018 WL 481890, 2018 U.S. Dist. LEXIS 8222 (S.D.N.Y. Jan. 18, 2018).

Searle has alleged that (1) the advertised price of the contacts was deceptive, (Dkt. No. 1, at ¶¶ 51, 54–55), (2) Contact Lens King advertised this price, (*id.* at ¶ 54) (3) this price appeared on Contact Lens King's website on October 29, 2024 (*id.* at ¶¶ 50, 52), and that this price was "never available to her" because Contact Lens King added a $42.16 processing fee to her order, (*id.* at ¶¶ 55–56). These allegations suffice to give Contact Lens King fair notice of Searle's claim so that they may prepare a defense. *See Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 530–32 (S.D.N.Y. 2021) (finding that the plaintiffs satisfied Rule 9(b)'s pleading standard where the plaintiffs specified the fraudulent statements, that the defendant made the statements, that the statements were made on labels and on webpages before plaintiffs made their purchases in 2019, and why the statements were false). The additional details Contact Lens King argues are lacking can be ascertained during discovery. *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 568 (S.D.N.Y. 2017) (finding that the plaintiffs satisfied the requirements of Rule 9(b) and "[t]he additional details demanded by [the defendant] can be the subject of discovery").

### 2.    Merits

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in the sale of consumer goods, Cal. Civ. § 1770(a)(5); the UCL makes actionable "any

unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising," Cal. Bus. & Prof. Code § 17200; and the FAL prohibits "untrue or misleading" advertising, Cal. Bus. & Prof. Code § 17500. These claims are governed by the "reasonable consumer" standard. *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024) (citing *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023)). This standard requires the plaintiff to "show that members of the public are likely to be deceived." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "This requires more than a mere possibility that the defendant's representations might conceivably be misunderstood by some few consumers viewing them in an unreasonable manner." *Bodenburg v. Apple Inc.*, 146 F.4th 761, 769 (9th Cir. 2025) (citation modified). Instead, "the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Courts rarely grant motions to dismiss for failure to satisfy the reasonable consumer test "[b]ecause what a reasonable person would believe is generally a question of fact." *Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 841 (E.D. Cal. 2024) (alteration in original) (quoting *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613, 2020 WL 1245130, at *9, 2020 U.S. Dist. LEXIS 46197, at *27 (N.D. Cal. Mar. 16, 2020)); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (stating that the reasonable consumer test "raises question of fact that are appropriate for resolution on a motion to dismiss only in "rare situation[s]" (alteration in original) (quoting *Williams*, 552 F.3d at 939)).

14

Searle alleges that Contact Lens King advertised a price of $19.95 per box of the 1-Day Acuvue Moist 90 Pack. (Dkt. No. 1, ¶ 52). She expected her total purchase of one box per eye to cost $39.90 plus shipping and was "baited" to take several steps in order to make her purchase. (*Id.* at ¶¶ 52, 54). However, Contact Lens King required her to pay "$42.16 in 'Processing Fees' over and above the price it advertised to her." (*Id.* at ¶ 56). Here, the allegations that the processing fee was not disclosed in the advertised price of the product and that Searle was "bait[ed] . . . to take several steps" to make her purchase support a finding that a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled.[5] *See Hall v. Marriott Int'l, Inc.*, No. 19-CV-1715, 2020 WL 4727069, at *8, 2020 U.S. Dist. LEXIS 148467, at *24 (S.D. Cal. Aug. 14, 2020) (declining to conclude as a matter of law at the motion to dismiss stage that the alleged failure to disclose a resort fee until a consumer was "invested in the booking process" would not deceive a reasonable consumer under the CLRA, UCL, and FAL); *Watson*, 736 F. Supp. at 842 (finding that the plaintiffs adequately pled that the defendant's failure to disclose a service fee was deceptive under the CLRA in part because the service fee at issue was not disclosed until the checkout screen and did not appear in the defendant's signage or advertising, including on their official website); *Nail v. Lens.com*, No. 24-CV-01149, 2024 WL 4477012, at *4, 2024 U.S. Dist. LEXIS 185844, at *10 (D. Nev. Oct. 11, 2024) (denying motion to dismiss the plaintiff's claims under the CLRA, UCL, and FAL where a processing fee appeared for the first time on a shipping-information page, and where the customer did not know that the fee was a processing fee unless they requested a "Full Receipt"

---

[5] Searle does not specifically allege when she discovered that Contact Lens King would charge a processing fee. However, the Court may draw the reasonable inference that the fee was disclosed at some point after Searle was "bait[ed]. . . to take several steps in order to make the purchase." (Dkt. No. 1, ¶ 54; *see also id.* at ¶ 80 (stating that Searle was injured by "investing time and effort into selecting and finalizing a purchase without knowing how much the purchase would cost")).

15

from the defendant's customer representative). Drawing all reasonable inferences in Searle's favor, the Court cannot conclude as a matter of law at this early stage of proceedings that the addition of a processing fee above the initially advertised price of the contacts would not deceive a reasonable consumer.

### C. Unjust Enrichment

Contact Lens King moves to dismiss Searle's claim for unjust enrichment under New York and California common law because it "is based upon the same facts as Searle's statutory claims" and because she "cannot bring a standalone unjust enrichment claim under California law." (Dkt. No. 35-2, at 25). Searle responds that her claim for unjust enrichment "requires proof of different facts than the GBL claim" and her claim for unjust enrichment under California common law is a viable quasi-contract claim seeking restitution. (Dkt. No. 42, at 17).

To state a claim for unjust enrichment in New York, the plaintiff must "allege that [i] [the] defendant was enriched; [ii] the enrichment was at [the] plaintiff's expense; and [iii] the circumstances were such that equity and good conscience require [the] defendant[] to make restitution." *Harris v. LoveShackFancy, LLC*, No. 25 CIV. 5828, 2026 WL 2085573, at *17, 2026 U.S. Dist. LEXIS 161781, at *45 (S.D.N.Y. July 20, 2026) (quoting *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 384 (S.D.N.Y. 2024)). Under California law, although "there is no standalone cause of action for 'unjust enrichment,'" a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Hall*, 2020 WL 4727069, at *13, 2020 U.S. Dist. LEXIS 148467, at *38 (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). To allege such a claim, the plaintiff must "assert '[1] receipt of a benefit and [2] unjust retention of the benefit at the expense of another.'" *Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1071 (S.D. Cal. 2021) (quoting *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Ct. App. 2008)).

"Under both California and New York law, 'an unjust enrichment claim cannot survive "where it simply duplicates, or replaces, a conventional contract or tort claim."'" *Cavallaro-Kearins v. Gruns Nutrition Inc.*, No. 25-CV-4998, 2026 WL 1398422, at *16, 2026 U.S. Dist. LEXIS 111094, at *49 (S.D.N.Y. May 19, 2026) (quoting *Koenig v. Bolder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012))); *see also Gamino v. Spin Master, Inc.*, No. CV 23-2242, 2025 WL 1421907, at *8, 2025 U.S. Dist. LEXIS 69898, at *19 (C.D. Cal. Mar. 31, 2025) ("Applying the law of both states, district courts . . . have concluded that '[u]njust enrichment claims should be dismissed where the violative conduct alleged is coterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed.'" (alteration in original) (quoting *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021)). "Two claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar,* 854 N.Y.S.2d 536, 538 (App. Div. 2008)).

Here, Searle's claim for unjust enrichment is based on Contact Lens King receiving a benefit "through unlawful and misleading drip pricing, as well as through the oppressive psychological mechanisms on which drip pricing depends." (Dkt. No. 1, ¶ 105). She alleges that Contact Lens King "should be compelled to disgorge the wrongfully obtained fees it received as a result of its inequitable conduct." (*Id.* at ¶ 106). This claim is based on the same set of facts as Searle's other causes of action under state law. (*Compare id.* at ¶¶ 102–106, *with id.* at ¶ 80 (for N.Y. Gen. Bus. Law §§ 349–350 claim: "Plaintiff and Class Members have been injured as a result of Defendant's drip pricing"), *id.* at ¶ 88 (for CLRA claim: "Plaintiff and Class Members have suffered damage by spending time and money they would not have spent but for

17

Defendant's misleading drip pricing"), *id.* at ¶¶ 95, 96 (for FAL claim: seeking, inter alia, restitution because "Plaintiff and Class members have suffered injury in fact and lost money by spending time and money they would not have spent but for Defendant's misleading drip pricing"), *and id.* at ¶ 100 (for UCL claim: seeking, inter alia, restitution because "[p]laintiff and class members have suffered injury in fact and lost money by spending time and money he [*sic*] would not have spent but for Defendant's misleading drip pricing."). It does not matter, as Searle suggests, that her claim for unjust enrichment "requires proof of different facts than the GBL claim," (Dkt. No. 42, at 18). *See Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 117 (S.D.N.Y. 2021) (stating that the rule from *NetsJets Aviation*, 537 F.3d at 175, "says nothing about a comparison of elements," but rather facts and damages).

Searle argues that sections 349 and 350 of the New York General Business Law provide for relief unavailable under a claim for unjust enrichment. (*See* Dkt. No. 42, at 18 ("Neither the treble damages, nor the statutory damages, nor the actual damages linked to Plaintiff's expenditure of time and effort are available under Plaintiff's unjust enrichment claim.")). But that is irrelevant. Instead, to sufficiently plead that her unjust enrichment claim is not duplicative of her claims under sections 349 and 350, she had to allege the opposite: that the relief available under an unjust enrichment claim is distinct from the relief available under sections 349 and 350. She has failed to do so. "Courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims." *Bates v. Abbott Lab'ys*, 727 F. Supp. 3d 194, 227 (N.D.N.Y. 2024) (quoting *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (collecting cases), *aff'd*, No. 24-919-CV, 2025 WL 65668, 2025 U.S. App. LEXIS 496 (2d Cir. Jan. 10, 2025). Similarly, Searle fails to allege that the relief available under unjust enrichment is distinct from the relief available on her California law claims. *See Balzer v.*

18

*Wal-Mart Stores, Inc.*, No. CV 14-9779, 2015 WL 13828418, at *4, 2015 U.S. Dist. LEXIS 25714, at *14–15 (C.D. Cal. Feb. 25, 2015) ("[C]ourts generally dismiss quasi-contract claims that are merely duplicative of UCL, FAL, and CLRA claims, *which already provide for restitution as a remedy*." (emphasis added)) (collecting cases).

### D.    Leave to Amend

Searle requests leave to amend "if any of her factual pleadings are deemed to be inadequate. (Dkt. No. 42, at 19). Federal Rule of Civil Procedure 15(a)(2) requires that a court "freely give leave when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021). A request to amend is futile where the problem with the claim is "substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, because it is conceivable that the Complaint's deficiencies with respect to the New York General Business Law claims could be fixed with other pleading and because Searle has has not yet had an opportunity to amend, the Court grants Searle's request for leave to file an amended complaint to replead her New York General Business Law claims. Amendment of her unjust enrichment claim, on the other hand, would, for the reasons stated above, be futile.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss, Dkt. No. 35, is **GRANTED in part**; and it is further

**ORDERED** that Plaintiff's cause of action under N.Y. Gen. Bus. Law §§ 349–350 is **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff's claim for relief for unjust enrichment is **DISMISSED**; and it is further

**ORDERED** that Defendant's motion to dismiss is otherwise **DENIED**; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order. Any amended complaint must be a complete pleading which will replace the current Complaint in total; and it is further

**ORDERED** that if Plaintiff timely files an amended complaint, Defendant must respond to Plaintiff's amended complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that if Plaintiff fails to file an amended complaint within thirty (30) days from the date of this Order or to request an extension of time to do so, the complaint will proceed as to the above-identified claims and Defendant must file a formal response to Plaintiff's complaint by September 30, 2026.

**IT IS SO ORDERED.**

Dated: <u>August 4, 2026</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

20